UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. No. 03-00248DAE |
| | ) | |
| Plaintiff, | ) | Honolulu, Hawaii |
| | ) | October 17, 2003 |
| | ) | 10:20 a.m. |
| v. | ) | |
| | ) | COPY |
| SAMUEL K. KAAUWAI, III, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

TRANSCRIPT OF WITHDRAWAL OF NOT GUILTY PLEA AND TO PLEAD ANEW
BEFORE THE HONORABLE LESLIE E. KOBAYASHI
UNITED STATES MAGISTRATE JUDGE.

APPEARANCES:

For the Plaintiff: U.S. ATTORNEY'S OFFICE
By: MARSHALL SILVERBERG, ESQ.
300 Ala Moana Boulevard, #6100
Honolulu, Hawaii 96850

For the Defendant: WILLIAM M. DOMINGO, ESQ.
568 Halekauwila Street, 2nd Floor
Honolulu, Hawaii 96813

Transcriber: Jessica B. Cahill
P.O. Box 1652
Wailuku, Maui, Hawaii 96793
Telephone: (808)244-0776

Proceedings recorded by electronic sound recording, transcript produced by transcription service

EXHIBIT 2

THE CLERK: United States District Court for the District of Hawaii, with the Honorable Leslie E. Kobayashi, United States Magistrate Judge presiding is now in session. Please be seated.

Criminal 03-00248DAE, United States of America versus Samuel K. Kaauwai, III. This case has been called for hearing on a motion for withdrawal of not guilty plea and to plead anew.

MR. SILVERBERG: Good morning, your Honor, Marshall Silverberg on behalf of the United States.

THE COURT: Good morning.

MR. DOMINGO: Good morning, your Honor, may the record reflect the presence of Samuel K. Kaauwai, III, along with Assistant Federal Defender William Domingo.

THE COURT: All right. Good morning. Mr. Kaauwai, the record will reflect your presence. Is it your intention today to plead guilty to some or all of the charges against you in this case?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. Is there a plea agreement in this case?

MR. SILVERBERG: Yes, your Honor.

THE COURT: There is?

MR. SILVERBERG: We should have sent it to the chambers yesterday. I'm sorry if you didn't get it.

THE COURT: Oh, no, I -- I do have it. I just -- did

he sign it?

MR. SILVERBERG: Yeah, he signed it this morning in the courtroom.

THE COURT: Okay. I have -- oh, I'm sorry, I do have it here. I put things right on top of it. Very good. So, there's a plea agreement in the matter. All right.

Mr. Kaauwai, before the Court can accept your guilty plea I must know that you understand what you are doing, that you are pleading guilty freely and voluntarily, that there is a factual basis for your change of plea, and that the ends of justice would be met by permitting you to change your plea.

To make sure that you understand I will ask you questions. If at any time you do not understand or hear the questions I ask of you please say so. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. Mr. Nakamura, if you would please administer the oath to the defendant.

SAMUEL K. KAAUWAI, III

Was called by the Court and after having been first duly sworn was examined and testified as follows:

THE COURT: What is your full name?

THE DEFENDANT: My full name is Samuel Mahila Kaauwai, the third.

THE COURT: Okay. Mr. Kaauwai, how old are you?

THE DEFENDANT: I am 37.

THE COURT: All right. How far did you go in school?

THE DEFENDANT: My sophomore year.

THE COURT: All right. And you're able to read and write; is that correct?

THE DEFENDANT: Yes, your Honor.

THE COURT: Have you taken any medication, alcohol or drugs of any kind today?

THE DEFENDANT: No, your Honor.

THE COURT: Are you feeling well and alert and able to understand what's going on?

THE DEFENDANT: Yes, your Honor.

THE COURT: Have you been treated recently for any mental illness or addiction to narcotic drugs of any kind?

THE DEFENDANT: No, your Honor.

THE COURT: Mr. Domingo, to the best of your knowledge, is your client fully competent and capable of entering a valid plea?

MR. DOMINGO: Yes, your Honor.

THE COURT: The Court finds the defendant is fully competent and capable of entering a valid plea. Now, if you wish, you can choose to enter a guilty plea in this case -- you have that right to enter the guilty plea before a United States District Judge. If you consent today, however, you may enter your plea before me as a United States Magistrate Judge. If you did so, then Judge Ezra will impose sentence at a later

hearing. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. I have before me a consent to Rule 11 plea in a felony case. It's file marked October 17, 2003. On the second page it has the signatures of Mr. Kaauwai, Mr. Domingo and Mr. Silverberg. Is that your signature on the page?

THE DEFENDANT: Yes, your Honor.

THE COURT: By signing this did you wish to consent to enter your plea before a United States Magistrate Judge and to give up your right to enter that plea before a United States District Judge?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. And, counsel, did you discuss the con -- consent form with your client, and are you fully satisfied that he understands it?

MR. DOMINGO: Yes, your Honor.

THE COURT: And you've signed it also; correct?

MR. DOMINGO: Yes, I have.

THE COURT: The Court finds the defendant has consented to enter his plea before a United States Magistrate Judge. Have you received a copy of the indictment that is the written charges pending against you in this case?

THE DEFENDANT: Yes, your Honor.

THE COURT: Have you read through those charges and

fully discussed those charges and all the facts surrounding those charges with Mr. Domingo your attorney?

THE DEFENDANT: Yes, I have.

THE COURT: Are you fully satisfied with the legal representation that you have received from Mr. Domingo in your case?

THE DEFENDANT: Yes.

THE COURT: All right. And, Mr. Domingo, are -- is your client's guilty plea and other actions before the Court today pursuant to your advice and recommendation?

MR. DOMINGO: Yes, your Honor.

THE COURT: The Court has the memorandum of plea agreement. This is the original dated October 17, 2003. It is a paginated document and on the last page it is numbered 13. It has the signatures of counsel as well as the defendant, and is that your signature on the last page, Mr. Kaauwai?

THE DEFENDANT: Yes, it is, your Honor.

THE COURT: All right. Did you have an opportunity to read this document and to discuss it with your lawyer before you signed it?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand the terms of the plea agreement?

THE DEFENDANT: Yes, your Honor.

THE COURT: Is this the only and entire agreement that

you have with the Government?

THE DEFENDANT: Yes, your Honor.

THE COURT: Have you -- has anyone made any other or different promises or assurance of any kind in order to get you to plead guilty?

THE DEFENDANT: No, your Honor.

THE COURT: Has anyone attempted in any way to force you to plead guilty, or to threaten you, or pressure you in any way?

THE DEFENDANT: No, your Honor.

THE COURT: Mr. Silverberg, if you would state the essential terms of the plea agreement including specifically the waiver of appeal provisions?

MR. SILVERBERG: Yes, your Honor. The defendant agrees to plead guilty to Count 1, which charges him with being a convicted felon who possessed a firearm and ammunition that traveled in interstate commerce in violation of Title 18, United States Code, Section 922G1.

In exchange for agreeing to do that the Government agrees that at the time of sentencing we'll move the Court to dismiss the remaining Counts, that is Counts 2 and 3.

The defendant agrees to waive his right to proceed to trial, including all the rights that are associated with going to trial, including taking the stand, presenting a defense, and cross-examining the Government's witnesses.

He waives his right to appeal in all instances except for two. That is if the Court makes an upward departure and the defendant reserves the right to challenge on appeal that -- the upward departure.

In addition, the defendant reserves the right to challenge on appeal the ineffective assistance of counsel. That is he can raise that issue on appeal or collaterally. Except for those two issues he waives his right to appeal.

Finally, the defendant agrees to be bound by his plea agreement and not to seek to withdraw from it, but if he nonetheless decides to seek to withdraw from it, and the Court allows him to withdraw from it that any statements that he makes today in front of this Court or in the plea agreement regarding his guilt or otherwise could be used against him in any subsequent trial or other proceeding.

THE COURT: What Mr. Silverberg has just explained to the Court does that accurately state what you understand to be your agreement with the Government?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you fully understand the charges covered by the plea agreement?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. Do you understand that you are giving up all of your rights to appeal any sentence imposed, or to collaterally attack any sentence except in two limited

circumstances.

One, in the event that you allege that Mr. Domingo was ineffective as your attorney; or two, in the event that the sentencing judge imposes a sentence that is more severe -- that is above the guideline range as an upward departure and imposes a more severe sentence. In all other instances you'll be giving up your rights to appeal. Do you understand?

THE DEFENDANT: So, what we had agreed on every and everything and what I fall under my -- my guidelines --

THE COURT: Uh-huh.

THE DEFENDANT: -- the Judge still can go higher than that. Is that what you're saying?

THE COURT: In some circumstances the Judge has the authority to impose a sentence that might be more severe or less severe than the guideline range.

If the Judge imposes a sentence that is less severe or within the guideline range you don't have a right to appeal that. You're giving up that right. But if he -- if he imposes a sentence that is higher, that is more severe; in that instance you would still be able to appeal the sentence. You're not giving up your right.

THE DEFENDANT: Okay.

THE COURT: Okay. So, in -- in the event that he does an upward departure, meaning higher --

THE DEFENDANT: Yes.

THE COURT: -- than the guideline range you still have the right to either appeal the sentence or to collaterally attack that sentence. All right.

THE DEFENDANT: Okay. I understand now, your Honor.

THE COURT: Okay. But other than that -- or in the event that you say that Mr. Domingo was ineffective as your attorney, you -- you don't have any rights to --

THE DEFENDANT: No, he has given me all his -- his honesty.

THE COURT: -- right. Okay.

THE DEFENDANT: Yeah.

THE COURT: So, that's what this agreement provides for is that in addition to they're agreeing after sentencing to dismiss those other Counts, this -- that -- that you're agreeing that you will give up your rights to appeal except for those two limited circumstances.

THE DEFENDANT: I understand, your Honor.

THE COURT: Okay. For the offense charged in Count 1 if you would state the possible penalties that he would face if he pleads guilty including the maximum and mandatory minimum periods of imprisonment, maximum and minimum fines, whether there's a maximum period of supervised release, or a mandatory minimum period of supervised release, and what special penalty assessment applies?

MR. SILVERBERG: Yes, your Honor. There -- there is no

mandatory minimum term of imprisonment. There is a maximum sentence of ten years, and there's no minimum fine. There's a maximum fine of $250,000.00. The supervised release under the guidelines is between two and three years, and there is a mandatory $100.00 special assessment.

THE COURT: Mr. Domingo, do you agree with that summary as to the possible penalties?

MR. DOMINGO: Yes, your Honor.

THE COURT: Do you understand, Mr. Kaauwai, that these are the possible penalties which would apply if you enter a guilty plea to the charge of Count 1 against you in this case?

THE DEFENDANT: My -- my guilty plea, your Honor, then this $250,000.00 fine, would I have to pay that?

THE COURT: Well, that's -- that's the maximum that you would face -- that -- that -- under the statute. What I've asked him to say is that's not necessarily what your sentence is going to be --

THE DEFENDANT: Uh-huh.

THE COURT: -- but that is the maximum. So, you have a risk -- a potential of facing that.

THE DEFENDANT: Oh, okay.

THE COURT: Of being ordered to do that, but it will be up to Judge Ezra. So, I've asked Mr. Silverberg to state what is the maximum fine --

THE DEFENDANT: Oh, okay.

THE COURT: -- that you could be required, and you wouldn't be required to pay more than $250,000, but there's no minimum fine. So, it could be anywhere from zero to $250,000.

THE DEFENDANT: Oh, okay. Okay, your Honor, I understand.

THE COURT: All right. All right. So, you understand the sum -- the possible penalties?

THE DEFENDANT: Yes.

THE COURT: All right. During a period of supervised release you have to comply with a set of conditions that will be explained to you by the probation officer. These conditions include that you obey the law, that you report to the probation officer as required and other conditions.

If the Court determines that you violated any of those conditions during the period of supervised release you could be ordered to serve prison time. Do you understand that? All right. So, supervised release is like on the State side what they would call as probation.

THE DEFENDANT: Yes.

THE COURT: All right. There is a period of time that you have to comply, and if you violate you could come back to Court and the Court can say, listen, you got to serve prison time. You understand that?

THE DEFENDANT: Okay. So, your Honor, like, it says, like, ten years. If I do my ten years I get supervised release.

THE COURT: For at least two years.

THE DEFENDANT: So, after my ten years I do, like, two years more --

THE COURT: Right.

THE DEFENDANT: -- for supervised release.

THE COURT: Right.

THE DEFENDANT: And then if I, excuse me, if I violate any of my stipulations, like, I don't report in or something I would have to do those two years then, or I pick up another new case? I'm just --

THE COURT: For two years you would -- well, at least two years --

THE DEFENDANT: -- yeah.

THE COURT: -- you'll probably have to report to your probation officer. All right. And you're going to have conditions. Probably that you be drug free and whatever.

THE COURT: Yes, your Honor.

THE COURT: And so, if you violate during that time you would come in before the Judge, and the Judge would make a determination whether to make you be on supervised release for a longer period of time, or even make you go back to prison and serve additional time.

THE DEFENDANT: Okay, your Honor.

THE COURT: Okay. You understand?

THE DEFENDANT: I understand.

THE COURT: All right. Are you presently on probation, parole, or supervised release from another case?

THE DEFENDANT: I'm on probation right now on the State side.

THE COURT: All right. If you plead guilty to the present charge, that is Count 1, this may result in the revocation of your probation on the State side. Do you understand that?

THE DEFENDANT: Yes, I -- I do.

THE COURT: Okay. All right. Does the United States contend today, Mr. Silverberg, that the offense to which he is today pleading guilty occurred while he was out on bond in relation to some other Federal criminal charge?

MR. SILVERBERG: No, your Honor.

THE COURT: If you are convicted of the charges in this case you may lose valuable civil rights including the right to vote, the right to serve on a jury, the right to hold public office, and the right to possess any kind of firearm. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. The United States Sentence -- Sentencing Commission has issued guidelines for Judges to use in determining sentences in criminal cases. Have you and Mr. Domingo discussed those guidelines and how they may apply to you and your case?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. Do you understand that the Judge will not be able to determine the guideline sentence for your case until after the presentence report has been prepared, and until after you and Mr. Domingo and Mr. Silverberg have had a chance to read that report and to file any objections to the information in that report and the application of the guidelines as recommended by the probation officer?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. Do you also understand that any sentence imposed by the Judge may be different from any estimate that your lawyer may have given you?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. Do you also understand that after your guideline range has been determined the Court has the authority in some circumstances to depart from those guidelines and to impose a sentence that is less severe, that's called a downward departure; or more severe, an upward departure than what's required by the guidelines?

THE DEFENDANT: Yes, your Honor.

THE COURT: If the sentence is more severe than you expected you will still be bound by your guilty plea. Even if you do not like the sentence imposed you will not be able to change your guilty plea or to take it back. So, the time to make that decision is now. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Parole has been abolished. If you are sentenced to prison you will not be released on parole. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: You have certain rights. You have the right to plead not guilty to any offense charged against you and to persist in that plea. You would then have the right to trial by jury.

At trial you'd have the right to have an attorney represent you and defend you, the right to see and hear all witnesses, the right to have your attorney cross-examine those witnesses, the right to testify or remain silent and not testify, and the right to have the Court issue subpoenas for any witnesses you wish to call in your defense.

At trial you would be presumed to be innocent and the United States would have the burden of proving that you are guilty beyond a reasonable doubt. Before you can be convicted all 12 jurors must be convinced that the United States met that burden.

If you are convicted after a trial you would then have the right to appeal that conviction to a higher Court, and if you could not afford to pay the cost of such an appeal the Government would pay those costs for you. Do you understand that you have this right to trial as well as the other rights

that I've just explained?

THE DEFENDANT: Yes, your Honor.

THE COURT: But if you plead guilty you'll be waiving or giving up your rights and there will be no trial. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. As long as you plead not guilty you have the right to remain silent, but if you choose to plead guilty today I am going to ask you what it is that you did that makes you guilty of Count 1, and you must answer truthfully under oath even if your answers establish that you committed a crime. Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Mr. Silverberg, if you would summarize for the defendant and the Court the essential elements that the Government would have to prove if this matter went to trial?

MR. SILVERBERG: Yes, your Honor. There are three elements. That is that the defendant possessed a firearm or ammunition as charged in Count 1 of the indictment. Two, that at the time he possessed the firearm or ammunition he had previously been convicted of a felony offense. And three, the firearm or ammunition traveled at some point earlier in interstate commerce.

THE COURT: Mr. Domingo, do you disagree in any respect with that summary?

MR. DOMINGO: No, your Honor.

THE COURT: Mr. Kaauwai, do you understand that if there were a trial on these charges the Government would have to bring evidence such as witnesses and the exhibits required to prove each of those essential elements beyond a reasonable doubt?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. Now, the plea agreement includes a written summary of the facts upon which the plea is based. These appear at page 3, starting at paragraph 8 -- starting on page 3 and going on through page 5. Have you had an opportunity to read that statement of facts?

THE DEFENDANT: Yes, your Honor.

THE COURT: Are those facts true in every respect?

THE DEFENDANT: Excuse me. Yes -- yes, it is, your Honor.

THE COURT: All right. On page 3, it lists that you were convicted of several felony offenses; is that true and on those dates?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. Now, tell me what it is that you did that constitutes the crime charged against you in this case?

THE DEFENDANT: The charge that I'm -- I'm against right now?

THE COURT: That you're pleading guilty to, yes.

THE DEFENDANT: I was carrying a firearm.

THE COURT: Uh-huh.

THE DEFENDANT: Oh, on -- on March 14th, that the firearm that was in the --

THE COURT: The backpack?

THE DEFENDANT: -- the backpack --

THE COURT: All right.

THE DEFENDANT: -- that I'm pleading guilty to.

THE COURT: All right. And the ammunition as well?

THE DEFENDANT: And the ammunition.

THE COURT: All right. And did these events occur within the State of Hawaii?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. And you knew that you weren't supposed to be carrying any firearms, because you were a convicted felon; is that correct?

THE DEFENDANT: Yes, your Honor.

THE COURT: And it also has statements in the summary of facts about -- about statements that you made to officers; is that true, with regard to the backpack and the possession of the firearm?

THE DEFENDANT: I denied it was my backpack.

THE COURT: Right. But then later on you did admit that --

THE DEFENDANT: To the State side -- the detective.

THE COURT: -- right.

THE DEFENDANT: Yes, your Honor.

THE COURT: About the possession of the firearm; is that correct?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. And then you don't -- you don't dispute that the firearm -- the Beretta was made on the mainland and brought at some point to Hawaii; correct? Not that you know it personally, but you don't deny that?

THE DEFENDANT: Oh, no, I don't.

THE COURT: It says -- apparently they have information from the ATF special agent --

THE DEFENDANT: Yes.

THE COURT: -- that the firearm was manufactured in Maryland, and the bullets were manufactured in Connecticut. You don't deny that; right?

THE DEFENDANT: Okay. I don't deny that.

THE COURT: And you had it here in Hawaii; correct?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay. All right. The Court finds that there is sufficient basis in fact concern -- containing each of the essential elements of the offense charged against him.

Now, if you plead guilty the Court will order a presentence report be prepared. This is that report about you

and your case. The sentencing judge will decide whether or not to accept your plea agreement based in part on the information provided in that presentence report.

If the sentencing judge decides to reject your plea agreement you will have an opportunity to take back your guilty plea and to plead not guilty. Do you understand that? But that's only if he rejects the plea agreement. Do you understand?

THE DEFENDANT: Yes, your Honor.

THE COURT: Okay.

THE DEFENDANT: I -- I have a question.

THE COURT: Yes.

THE DEFENDANT: Is that my currency that was in -- in my possession. As they was counting it out, you know, I had it in separate pockets. So, they pulled out some -- some currency from one pocket, and they was counting it to put it into my property. Then they checked another pocket, and they started counting out the other one. And then they went to another pocket and at that time when they pulled out currency from my back pocket they found a small package of crystal meth that was in my back pocket with part of my currency.

So, they confiscated that currency because of that, but I was hoping, you know, since -- I'm pleading guilty so, I'm not sure if I'll be able to get back that currency, or is -- is that completely tooken [sic] away from me?

THE COURT: Well, that's something that I think you have to follow-up with Mr. Silverberg. I don't know -- I'm not aware of any forfeiture action.

MR. SILVERBERG: Well, there's no forfeiture action, Judge, but my understanding is we didn't have the currency ever in our possession. It was always maintained by the State in their possession, and it was a robbery victim from whom most of the currency was taken from.

So, I -- I've been told, and I don't know if this has actually occurred, I've been told that that currency went back to the victim. Now, whether that currency includes all the money from the defendant or just the hundreds that we believe were -- was robbed from the victim, I don't know at this point.

THE COURT: Uh-huh.

MR. SILVERBERG: But I don't have any of it. If he's going to want that money back they're going to have to do something with the State, I think, because we've never taken possession of that evidence. We would have taken possession if it went to trial, but we've never had it transferred to us now, and -- and I just know the status. And frankly if we did have it I would ask for it to be paid in terms of a fine or restitution to the victim anyway.

THE DEFENDANT: Yeah.

MR. SILVERBERG: So, the -- the chances of him getting that money back were between zero and nil as far as we were

concerned.

THE COURT: Right. Okay. All right. I'm going to ask you now how do you plead to the charge against you then in Count 1 that charges you with on or about March 14, 2003, in the District of Hawaii, that you having previously been convicted of a crime punishable by imprisonment for a term exceeding one year did knowingly possess in or effecting commerce a firearm, to wit at Beretta model 84, 380 semi-automatic pistol, manufactured by Beretta in Maryland and five rounds of 380 ammunition manufactured by CCI in Idaho?

THE DEFENDANT: Guilty.

THE COURT: Wait. I'll -- okay. That's what it says in that, but the plea agreement says manufactured in Connecticut.

MR. SILVERBERG: Yeah, I -- I think it's actually Idaho. I'm not sure how the plea agreement said Connecticut. Either way the -- the essential element is that it's made outside of Hawaii --

THE COURT: Manufactured, yeah.

MR. SILVERBERG: -- yeah.

THE COURT: All right.

MR. SILVERBERG: And maybe that's why most of my colleagues actually put the other State, but it's manufactured in -- but I believe that it's Idaho.

THE COURT: All right. How do you now plead to that

charge guilty or not guilty?

THE DEFENDANT: Guilty, your Honor.

THE COURT: Mr. Domingo, are you aware of any reason why we shouldn't accept your client's plea of guilty to Count 1 against him?

MR. DOMINGO: No, your Honor.

THE COURT: The Court finds the defendant is fully competent and capable of entering a valid plea, that his plea of guilty is knowing and voluntary and supported by an independent basis in fact containing each of the essential elements of the charge against him.

I am therefore signing the report and recommendation concerning plea of guilty, and I am recommending that subject to the Court's consideration of the plea agreement that he be adjudged guilty and have sentence imposed. Objections to the report and recommendations are waived unless filed and served within ten days of today's date.

Now, Mr. Kaauwai, I'm ordering our Probation to prepare that presentence report. This is the report about you and your case. The probation officer will need to interview you. If you wish your attorney can be present during that interview.

Once the report is completed you'll have an opportunity to read it and to make comments on it, and then at the time of the sentencing hearing you and your attorney will

also have an opportunity to make a statement before the sentencing judge imposes your sentence.

Mr. Nakamura, if you would please set the sentencing date and time.

THE CLERK: Sentencing as to Count 1 of the indictment will be on July 6, Tuesday, 2004, at 1:30 p.m., before Chief Judge David Alan Ezra.

THE COURT: All right. Anything further on behalf of the Government?

MR. SILVERBERG: No, your Honor.

THE COURT: All right. Mr. Silverberg. Mr. Domingo, anything further on behalf of your client?

MR. DOMINGO: Nothing further. Thank you, your Honor.

THE COURT: All right. Then he's remanded back to the custody of the U.S. Marshals Services pursuant to the prior detention order. Good luck to you, sir. We're in recess.

THE CLERK: All rise. This Honorable Court stands in recess.

(At which time the above-entitled proceedings were concluded.)

CERTIFICATE

I, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

Dated this 22nd day of November, 2006.

Jessica B. Cahill

Jessica B. Cahill